

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
**ATTORNEY GENERAL**

AUSTIN 11, TEXAS

Honorable F. B. Caudle
County Attorney
Franklin County
Mt. Vernon, Texas

Opinion Number O-1303
Re: Does the Board of Trustees
have authority to designate poll-
ing places in bond elections for
an independent school district?

Dear Sir:

We are in receipt of your opinion request and quote from your letter as follows:

"In an election to determine the issuance of bonds for an independent school district wholly within a Justice Precinct and containing the entire city limits of a town, by an order of the Board of Trustees ordering the election, the courthouse was designated as the only polling place. The Justice Precinct in which the independent school district was located had four voting precincts. All the votes in the independent school district election were cast in election Precinct No. 2.

"First: In view of Article Six, Section Three-A of the Constitution, would any of the votes be counted except those residing in Precinct No. 2?

"Second: Article 2788, R.S. 1925 authorizes the Board of Trustees to designate the polling places and the order did designate the courthouse as the polling place; would Article Six, Section Three-A of the Constitution, or Article 2788, R.S. 1925 control?"

Article 6, Section 3a of the Constitution reads as follows:

"When an election is held by any county, or any number of counties, or any political subdivision of the State, or any political subdivision of a county, or any defined district now or hereafter to be described and defined within the State and which may or may not include towns, villages or municipal corporations, or any city, town or vil-
lage, for the purpose of issuing bonds or other-
wise lending credit, or expending money or

assuming any debt, only qualified electors
who own taxable property in the State, county,
political subdivision, district, city, town or
village where such election is held, and who
have duly rendered the same for taxation,
shall be qualified to vote and all electors
shall vote in the election precinct of their
residence."

Article 2788 reads, in part, as follows:

" . . . The election for said bonds shall be held with-
in thirty days after order of election, as fixed in the
election order. The board of trustees shall at the same
time fix the polling places for holding such election
and name a judge and two clerks at each polling place
. . ."

All independent school districts are created for free school
purposes and their affairs are managed by a board of trustees. The Consti-
tution provides that in all bond elections the electors shall vote in the
election precinct of their residence. There is no provision in the Consti-
tution which expressly prohibits the Legislature from providing that when
a defined territory is incorporated into an independent school district it
shall constitute an election precinct for all elections held for school
purposes; and in the absence of an express provision in the statute, author-
izing such districts to that effect, we think it will be implied from the
very nature of the case that it was so intended.

We are therefore of the opinion that for the purpose of voting
on the issuance of bonds or for the purpose of voting on all questions
affecting the interest of the public schools within an independent school
district, such territory legally constitutes a residence voting precinct
within the meaning of the Constitution, the polling places to be designated
by the school trustees as provided in Article 2788. See Parks et al vs.
West, 108 S.W. 466.

But if we are mistaken in this view of the law in holding that
an independent school district constitutes a residence voting precinct in
determining whether or not bonds should be issued and polls should have
been opened at all four voting precincts within the district, we feel cer-
tain that the courts would not invalidate the election where the board of
trustees, whose duty it is to designate the voting places, made an error
in naming only one, unless it be shown that they acted with a fraudulent
purpose.

It is a canon of the election law that an election is not to be
set aside for a mere formality or irregularity which can not be said in any

manner to have affected the result of the election. Courts are anxious rather to sustain than to defeat the popular will. Dillon Municipal Corporations, Fifth Ed., Vol. 1, p. 642.

Corpus Juris states the rule as follows:   "That where the polling place selected by the proper officers is outside the election district who vote thereat are not disfranchised on that account if the election is otherwise lawfully conducted. Even where the Constitution of the State restricts the right to vote to the election district  wherein the elector resides, yet where a distinction between an election district and an election precinct is recognized, votes cast at a polling place outside of the precinct but within the district are not to be rejected." 20 Corpus Juris, 102; Davis vs. State, 12 S.W. 857; Ex parte Stein, 135 S.W. 136.

In Ex parte White, 28 S.W. 542, the election precincts of a town were laid off from the courthouse square, the courthouse not being included in any of them, the votes were cast in different rooms of the courthouse, the court held that the Constitution, Article 6, Section 2, providing that electors should vote in the precinct of their residence, did not invalidate the election.

In view of the foregoing, it is our opinion that the votes of all the legally qualified voters of the school district voting at the place designated as the polling place by the board of trustees should be counted.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
  s/ Claud O. Boothman

Claud O. Boothman
Assistant

COB:s:egw

APPROVED SEP. 1, 1939

s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee
By BWB Chairman